**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**VINCENT R. GRIFFIN,**

      **Petitioner,**

                                 **Case No. 2:15-cv-2920**

      **v.**                         **CHIEF JUDGE SARGUS**

                                            **Magistrate Judge King**

**WARDEN, TOLEDO
CORRECTIONAL INSTITUTION,**

      **Respondent.**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 18), Petitioner's *Reply* (ECF No. 19), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. It is **FURTHER RECOMMENDED** that Petitioner's *Motion for Partial Summary Judgment* (ECF No. 27) be **DENIED**.

Petitioner's *Motion to Compel* (ECF No. 28) is **DENIED**.

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On December 1, 2009, S.R. was walking from the halfway house where she resided to a nearby community center for a GED class scheduled to begin at 5:00 p.m. At approximately 4:45 or 4:50 p.m., when she was about one block from the community center, appellant drove his van near S.R. and asked if she wanted a ride. S.R. did not know appellant, but she accepted his offer and got into the van. S.R. told appellant that she wanted to go to a grocery store near the intersection of Main Street and Alum Creek Drive to

purchase cigarettes before her class. S.R. would not have been able to make it to the store and back on foot in time for her class. Appellant agreed to take S.R. to the grocery store. After driving east toward the grocery store, appellant made a left turn away from the store and began driving north on Nelson Road. Appellant told S.R. that he wanted to go somewhere and talk for a few minutes. She agreed, but reiterated that she wanted to get cigarettes and arrive at her class on time.

Appellant drove to Nelson Park and parked his van in a parking space near a dumpster. He told appellant that he wanted to wait until the three or four other people at the park left. While they were waiting, appellant stepped outside the van and used the bathroom. After everyone else had left the park, appellant asked S.R. to get into the backseat of the van. He got in behind her and shut the door. S.R. later testified that at this point appellant seemed "edgy"; whereas, he previously had a "laid-back demeanor." S.R. began to feel apprehensive and felt that appellant was "up to something."

After S.R. and appellant moved to the backseat of the van, they began talking; appellant told S.R. to remove her pants. She refused. Appellant again demanded that S.R. remove her pants and began getting aggressive. S.R. told appellant "the only thing that you can basically do to me that hasn't ever been done is kill me and leave me in the park." (Tr. 293.) Appellant responded by saying "that can be arranged," and he retrieved a knife from the glove compartment of the van. (Tr. 294.) Appellant opened the knife and again ordered S.R. to remove her pants. S.R. refused, and appellant punched her in the mouth. S.R. hit and kicked appellant, causing appellant to lose control of the knife. Both appellant and S.R. tried to grab the knife, and they struggled and wrestled for control of it. While wrestling over the knife, S.R. bit appellant on the left arm four or five times; he punched S.R. in the face at least a dozen times. Eventually, appellant regained control of the knife. He ordered S.R. to remove her clothes and began trying to rip and cut her clothes off.

Appellant then demanded that S.R. perform oral sex on him if she would not remove her pants. Appellant attempted to force S.R.'s head toward him and continued to demand oral sex. During this time, two cars pulled into the parking lot for brief periods and then left. When a third car pulled into the parking lot and waited, appellant moved from the backseat to the driver's seat and tried to start the van. As appellant tried to start the van, S.R. moved to the passenger side of the backseat and escaped through the sliding door. S.R. ran to the nearby car, which had begun to drive away,

2

and screamed for help. The driver of that car, Nicole Jones ("Jones"), called 911 and then let S.R. into her car. While Jones was on the phone with emergency services, appellant started the van. Jones moved her car to block the entrance to the parking lot. Appellant began to move the van and it "cut off"; Jones saw appellant twice go from the driver's seat to the sliding door on the passenger side. When emergency services arrived, appellant was no longer in the parking lot, but neither Jones nor S.R. saw him leave. Appellant was transported to the hospital, where she was treated for cuts and bruises and a puncture wound to the back of her left leg.

Detective Ronald Haynes ("Detective Haynes") of the Columbus Division of Police identified the van as being registered to appellant. Detective Haynes identified an existing photograph lineup containing appellant's picture and took it to the hospital to show S.R. While Detective Haynes was at the hospital, he learned that another detective had identified a newer photo of appellant and prepared a lineup using that newer photo. Detective Haynes showed S .R. the photo lineup with the newer photo of appellant, but she was unable to identify any of the men in the lineup as being her attacker. Detective Haynes then showed S.R. the second photo lineup, containing the older photo of appellant, and she identified appellant as the man who attacked her.

Appellant told Detective Haynes that his van had been stolen on December 1 while he was playing basketball at a recreation center at another park. Appellant told Detective Haynes he arrived to play basketball around 4:00 p.m. and learned that his van had been stolen at around 5:30 or 6:00 p.m. Detective Haynes obtained a search warrant for appellant's apartment and recovered several sets of clothing potentially matching S.R.'s description of her attacker's attire, along with a knife matching S.R.'s description of the knife used against her.

Appellant was indicted on charges of attempted rape, felonious assault, kidnapping, and abduction. The attempted rape charge included a sexually violent predator specification and a repeat violent offender specification. The felonious assault and kidnapping charges also included repeat violent offender specifications. Appellant attested that he was indigent and unable to afford counsel, and the trial court appointed Attorney Gerald Noel ("Attorney Noel") to represent appellant.

On June 14, 2010, before jury selection began, appellant stated that he disagreed with Attorney Noel on trial strategy. The trial court

engaged in a colloquy with appellant regarding the possibility of self-representation, but ultimately appellant chose to continue being represented by Attorney Noel. On June 17, 2010, while Attorney Noel was cross-examining the final prosecution witness, the trial court declared a recess and suspended proceedings until June 21, 2010. When the court reconvened on June 21, 2010, the trial judge stated that, on June 17, 2010, the Ohio Supreme Court suspended Attorney Noel from the practice of law. The trial judge then declared a mistrial. Appellant protested this decision and declared his intention to appeal the ruling, indicating that he wanted the trial to proceed. Later that day, after considering appellant's arguments and discussing the matter with the prosecutor, the trial judge vacated the mistrial ruling. The trial court informed appellant that he could have new counsel appointed or could represent himself. Appellant indicated that he wished to represent himself. The trial court engaged in a lengthy colloquy with appellant regarding self-representation. The trial court concluded that appellant properly waived his right to counsel, and appellant signed a written waiver of his right to counsel. The jury convicted appellant on all four counts, and the trial court found appellant guilty of the sexually violent predator specification and the repeat violent offender specifications. Based on the convictions and specifications, the trial court sentenced appellant to jail terms of 18 years to life on the attempted rape conviction, 18 years on the felonious assault conviction, 20 years on the kidnapping conviction, and five years on the abduction conviction, with the sentences to run consecutively.

Appellant appeals his conviction and sentence, setting forth the following fourteen assignments of error for this court's review:

First Assignment of Error: Suspension of defense counsel from the practice of law before the conclusion of the trial made declaration of a mistrial a matter of "manifest necessity." The trial court properly declared a mistrial sua sponte, but erred by vacating that decision and allowing appellant to go forward without counsel.

Second Assignment of Error: The court erred in allowing appellant to proceed without counsel following the suspension of his attorney as the record demonstrates appellant was not competent to undertake self-representation.

Third Assignment of Error: The court erred by not having appellant evaluated to determine whether he was competent to undertake self-representation.

4

Fourth Assignment of Error: The trial court failed to assure that appellant's waiver of the right to counsel was truly voluntary, made with "an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other matters essential to a broad understanding of the whole matter."

Fifth Assignment of Error: The court erroneously refused to inform the jury that appellant's decision to represent himself was precipitated by counsel's suspension from the practice of law.

Sixth Assignment of Error: The court erroneously denied appellant's motion for a new trial.

Seventh Assignment of Error: Prior to his suspension from the practice of law defense counsel rendered ineffective assistance, in violation of appellant's Sixth Amendment rights and the comparable protection of Article I, Section 10 of the Ohio Constitution.

Eighth Assignment of Error: The trial court erroneously overruled [appellant's] pretrial motion to suppress identification.

Ninth Assignment of Error: The court erroneously overruled appellant's objection to opinion testimony offered by the lead detective.

Tenth Assignment of Error: The trial court erroneously excluded Defense Exhibit 5.

Eleventh Assignment of Error: The evidence was insufficient as a matter of law to establish appellant knowingly caused serious physical harm to the victim, or that he knowingly caused or attempted to cause serious harm by means of a deadly weapon.

Twelfth Assignment of Error: With respect to the felonious assault count, the trial court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29.

Thirteenth Assignment of Error: Appellant's convictions are against the manifest weight of the evidence.

Fourteenth Assignment of Error: The court erred by imposing multiple sentences for allied offenses of similar import committed with a single animus.

*State v. Griffin,* No. 10AP-902, 2011 WL 3766751, at *1-4 (Ohio App. 10th Dist. Aug. 25, 2011).
On August 11, 2011, the appellate court sustained, in part, Petitioner's fourteenth assignment of
error, to the extent that his convictions for kidnapping and abduction should have been merged
for sentencing, but otherwise affirmed the judgment of the trial court. The case was remanded to
the trial court for re-sentencing.  *Id*.  On January 18, 2012, the Ohio Supreme Court dismissed
the appeal as not involving any substantial constitutional question.  *State v. Griffin*, 131 Ohio
St.3d 1413 (Ohio 2012).

On October 26, 2011, the trial court re-sentenced Petitioner, pursuant to the order of
remand, to an aggregate term of fifty-six years to life in prison.  (Doc. 18-2, PageID# 616-17.)
Petitioner apparently did not file an appeal from that judgment; however, in the meantime, he
pursued post conviction relief:

> While his appeal was pending [ ], appellant timely filed in the trial
> court a petition for postconviction relief, [FN1] pursuant to R.C.
> 2953.21, asserting two claims for relief. Appellant later amended
> his petition to add two additional claims for relief.
>
> Appellant subsequently filed a motion requesting a hearing on his
> petition, which the trial court denied. Appellant appealed that
> decision to this court. Concluding the trial court's order denying
> appellant's request for a hearing to be interlocutory and not a final,
> appealable order, we granted the motion to dismiss filed by
> plaintiff-appellee, State of Ohio. *State v. Griffin*, 10th Dist. No.
> 13AP–182 (May 3, 2013 *Journal Entry of Dismissal*).
>
> Thereafter, on February 6, 2014, the trial court issued a decision
> and entry denying appellant's postconviction petition. On March 5,
> 2014, appellant filed a document entitled "Notice of
> Appeal/Reopen Appeal of Post–Conviction." This court construed
> that filing as a timely notice of appeal. *State v. Griffin*, 10th Dist.
> No. 13AP–182 (Apr. 24, 2014) (memorandum decision).

II. ASSIGNMENTS OF ERROR

Appellant sets forth the following three assignments of error:

6

> [I.] Upon the Record, this Court will find that appellant has
> adduced full proof evidence (evidentiary) for this post-conviction,
> and Judge Kimberly Cocroft gave false reports on her decision, to
> not grant Griffin his right of passage through the Gate (Gate–
> Keeper), upon an arbitrary decision.
>
> [II.] Upon the Record, this Court will find the Sixth Amendment
> was violated (Ineffective Assistance of Counsel), upon the
> Suspension and New reliable Evidence.
>
> [III.] Actual Innocence do apply but Judge Cocroft refuse to
> acknowledge it. This is an Error and made in a blatant Way,
> because the Evidentiary–Evidence Wass adduced to these
> proceeding.
>
> (Sic passim.)
>
> FN1: As did the trial court, this court construes appellant's petition
> to vacate or set aside judgment as a petition for postconviction
> relief.

*State v. Griffin*, No. 13AP-182, 2014 WL 7273988, at *1 (Ohio App. 10th Dist. Dec. 23, 2014).

On December 23, 2014, the appellate court affirmed the judgment of the trial court. *Id*. On

March 19, 2015, the Ohio Supreme Court dismissed the appeal due to Petitioner's failure to file a

memorandum in support of jurisdiction in compliance with the Rules of Practice of the Supreme

Court of Ohio. *State v. Griffin*, 142 Ohio St.3d 1404 (Ohio 2015); (Doc. 18-2, PageID# 819.)

On June 3, 2015, the Ohio Supreme Court denied Petitioner's motion to reopen. *State v. Griffin*,

142 Ohio St.3d 1474 (Ohio 2015); (PageID# 856.)

Petitioner filed the *Petition* on September 16, 2015. He claims that he was denied the

effective assistance of trial counsel (claim one); was denied a fair trial because of prosecutorial

misconduct (claim two); was convicted in violation of the Fourth Amendment because police

withheld exculpatory evidence when obtaining the search warrant (claim three); and that his

constitutional rights were violated during the course of the multiple photo arrays (claim four). Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

### Motion for Partial Summary Judgment

Petitioner has filed what he has entitled a *Motion for Judgment on Part of the Pleading/ Summary-Judgment, Compromise and Offer to State of Ohio, pursuant to Rule 12 of 28 U.S.C. 2254 Proceedings, predicated by Rule 81(a)(2), pursuant [to] 28 U.S.C. 2243.* (ECF No. 27.)[1] Petitioner requests the Court to grant summary judgment in his favor and grant his immediate release based on his actual innocence of the charges against him, and on the claims asserted in and the arguments made in support of the *Petition*. He also requests a "compromise settlement conference hearing." *Id.* (PageID# 2122.)

Summary judgment may be appropriate in some habeas corpus cases. *Blackledge v. Allison*, 431 U.S. 63, 80–81 (1977); *Browder v. Director*, 434 U.S. 257, 266, n. 10 (1978). However, the movant must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record or "showing that the materials cited do not establish the absence or

---

[1] Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts provides:

> The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.

Rule 81 of the Federal Rules of Civil Procedure provides in relevant part:

> (4) Special Writs. These rules apply to proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings:

> (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and

> (B) has previously conformed to the practice in civil actions.

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The Court views the facts and any inferences that can be drawn from them in the light most favorable to the nonmoving party. *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted).

Summary judgment is disfavored in federal habeas corpus proceedings. *See Ruff v. Jackson,* No. 1:04–cv–014, 2005 WL 1652607, at *2 (S.D. Ohio June 29, 2005) (Summary judgment is "tantamount to granting Petitioner a default judgment which is relief that is unavailable in habeas corpus proceedings.") (quoting *Alder v. Burt*, 240 F.Supp.2d 651, 677 (E.D.Mich.2003) (internal citation omitted)). A habeas petitioner who seeks summary judgment must at a minimum satisfy the requirements of Rule 56 of the Federal Rules of Civil Procedure. *Franklin v. Mansfield Corr. Inst*., No. 3:04–cv–187, 2006 WL 2128939 (S.D.Ohio July 27, 2006)(citing *Blackledge v. Allison*, 431 U.S. at 80–81; *Browder v. Director*, 434 U.S. at 266, n. 10 (1978)). Petitioner has failed to do so here.

Respondent argues that Petitioner's claims are procedurally defaulted or without merit. Respondent's defenses – which, if established, would foreclose habeas relief – must be resolved by the Court in order to determine whether Petitioner is entitled to relief. Under these circumstances, summary judgment in Petitioner's favor is not warranted. Further, because

Petitioner asks that his convictions be vacated and that he be immediately released from incarceration, his request for a "compromise settlement" is likewise without merit.

It is therefore **RECOMMENDED** that *Petitioner's Motion for Partial Summary Judgment* (ECF No. 27) be **DENIED**.

## Motion to Compel

Petitioner has also filed what has been docketed as a *Motion to Compel*, entitled *Motion to Convey Status of This Case, and Motion to Compel This Court and Its Honorable Chief Judge to Rule in Petitioner's Favor, Upon the Prima Faci[e] Evidence That Support[s] the Summary Judgment/Settlement Conference Request Filed May 23, 2016.* (ECF No. 28.) In that motion, Petitioner again asks that summary judgment be granted in his favor based on his claimed actual innocence of the charges and on the claims that he raises in the *Petition.* He also seeks a copy of all documents filed in this case after May 23, 2016.

For the reasons discussed above, the record does not provide a basis for granting summary judgment in Petitioner's favor. Additionally, and as the docket reflects no documents were filed by any party after May 23, 2016, with the exception of Petitioner's own *Motion to Compel.* Petitioner's *Motion to Compel* (ECF No. 28) is therefore **DENIED**.

## Procedural Default

Respondent contends, *inter alia*, that Petitioner has procedurally defaulted certain of his claims. Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims

10

is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).
If he fails to do so, but still has an avenue open to him by which he may present his claims, then
his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*,
459 U.S. 4, 6, 103 (1982)(*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).
Where a petitioner has failed to exhaust his claims but would find those claims barred if later
presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ."
*Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person
convicted of a crime in a state court fails (for whatever reason) to present a particular claim to
the highest court of the State so that the State has a fair chance to correct any errors made in the
course of the trial or the appeal before a federal court intervenes in the state criminal process.
This "requires the petitioner to present 'the same claim under the same theory' to the state courts
before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir.
2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly
presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives
the state courts a fair opportunity to rule on the federal law claims being asserted. That means
that, if a claim is not presented to the state courts in the way in which state law requires, and the
state courts do not, for that reason, decide the claim on its merits, neither may a federal court do
so. "[C]ontentions of federal law which were not resolved on the merits in the state proceeding
due to respondent's failure to raise them there as required by state procedure" also cannot be
resolved on their merits in a federal habeas case - that is, they are "procedurally defaulted."
*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

11

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the Maupin analysis, in order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). But in order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. at 479). Counsel's ineffectiveness can constitute cause only if "that ineffectiveness . . . itself amount[s] to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411

12

F.3d 665, 668 (6th Cir. 2005). If the claim of ineffective assistance of counsel is itself procedurally defaulted, the petitioner who relies on that claim to excuse the procedural default of other claims must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id*., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default has occurred, it may not consider the merits of the procedurally defaulted

claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. at 495–96).

### Claims One, Two, and Four

In claim one, Petitioner alleges that he was denied the effective assistance of counsel because his attorney failed to obtain a copy of the 9-1-1 call that Petitioner allegedly made to the police, reporting that his vehicle had been stolen on the date in question, and failed to identify exculpatory evidence, *i.e.*, a photo array from which the alleged victim had been unable to identify Petitioner. Petitioner also argues that he was prejudiced by the trial court's failure to declare a mistrial on the basis that the jury had viewed his prior criminal record in the news. In claim two, Petitioner alleges that he was denied a fair trial because police and the prosecutor lied when they denied that Petitioner had reported his vehicle stolen and when they had withheld a photo array that had been shown to the alleged victim. In claim four, Petitioner alleges that violations occurred during the police investigation regarding multiple photo arrays. Petitioner has procedurally defaulted these claims because he failed to raise them on direct appeal or otherwise failed to present them to all the appropriate state courts.

Petitioner has never presented to the state courts a claim that the trial court should have granted a mistrial because the jury improperly viewed news reports regarding his prior conviction. Such a claim would appear to rely on evidence that is not readily apparent from the face of the record, and therefore would be properly raised in a petition for post conviction relief pursuant to O.R.C. § 2953.21. However, Petitioner did not raise any such issue in his post conviction proceedings. Moreover, it does not appear that Petitioner could meet the stringent

requirements for the filing of that claim in a successive post conviction action now.  *See* O.R.C. § 2953.23.[2]

Further, Petitioner did not argue on direct appeal that he had been denied a fair trial because the police and prosecution lied regarding evidence of a 9-1-1 call, or that the prosecutor

---

[2] O.R.C. § 2953.23 provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code, and "former section 2953.82 of the Revised Code" has the same meaning as in division (A)(1)(c) of section 2953.21 of the Revised Code.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

failed to disclose a photo array.[3]  He may now no longer do so, by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.).  The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default of this claim.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test.  To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law.  *See Coleman*, 501 U.S. at 732–33.  To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts.  *Ford v. Georgia*, 498 U.S. 411 (1991).  "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim."  *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

---

[3] The record does not support Petitioner's claim that the prosecution failed to disclose the photo array to which Petitioner refers.  On direct appeal, the state appellate court denied Petitioner's claim regarding an alleged improper identification procedure, noting:

> In the first photo lineup, using the more recent photograph, appellant is in the second position. His hair is difficult to see, but appears to be flecked with gray. In this photograph, appellant has a moustache but appears to be otherwise clean shaven. In the second photo lineup, containing the older photograph, appellant is in the third position. Appellant's hair is mostly dark in this photograph, with only a small amount of gray near the temples. His hairline appears to be noticeably different from the newer photo. Appellant has a moustache and appears to have a scruffy partial beard in this photograph. There is very little similarity between the two photographs, and appellant's appearance is noticeably different in each of them. Although we note the risks of using multiple photo lineups containing different photographs of the same subject, we find that, in this case, the identification procedure was not impermissibly suggestive, and the trial court did not err in overruling the motion to suppress.

*State v. Griffin*, 2011 WL 3766751, at *16.

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Moreover, Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

As to Petitioner's claim of denial of the effective assistance of trial counsel, Petitioner argued on direct appeal only that his attorney "provided ineffective assistance at a hearing on motions to suppress evidence, identification, and statements." *State v. Griffin*, 2011 WL 3766751, at *13. The state appellate court noted that

> [t]he crux of this claim is that appellant's attorney should not have called him to testify at the suppression hearing because "there was nothing to be gained by testifying" and because, on cross-examination, the state was able to have appellant authenticate judgment entries from prior convictions. (Appellant's brief at 35.)

*Id*. Petitioner did not thereafter raise this same issue on appeal to the Ohio Supreme Court. *See Memorandum in Support of Jurisdiction* (Doc. 18-2, PageID# 526-27.) In any event, Petitioner does not raise such allegation in these proceedings.

17

Petitioner asserted in his petition for post conviction relief, as he does in these proceedings, that he had been denied the effective assistance of counsel because his attorney had failed to obtain or fully review telephone records, *i.e.*, specifically a 9-1-1 call or calls allegedly made by Petitioner in which Petitioner claims to have reported his van as being stolen during the time of the offenses charged.  However, the record indicates that the prosecution had provided telephone records to counsel during the course of discovery.  (Doc. 18-2, PageID# 626-27.)  The state appellate court therefore denied this claim as barred under Ohio's doctrine of *res judicata*:

> [A]ppellant alleged he was not afforded effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution due to trial counsel's alleged failure to (1) investigate records of 9–1–1 calls that were provided in supplemental discovery[.]  . . .  The trial court rejected appellant's [ ] argument on grounds that appellant failed to provide evidence of the 9–1–1 calls. . . .
>
> "In Ohio, a properly licensed attorney is presumed competent." *State v. Taylor*, 10th Dist. No. 14AP–166, 2014–Ohio–3574, ¶ 11, citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Thus, the burden of demonstrating ineffective assistance of counsel is on the party asserting it. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). "Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." *Id.*, citing *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998).
>
> To prevail on a claim of ineffective assistance of counsel, appellant must demonstrate (1) defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's errors prejudiced appellant, depriving him of a trial whose result is reliable. *Cochran* at ¶ 12, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.
>
> In his petition, appellant alleged that he called 9–1–1 from his apartment between 5:30 and 6:00 p.m. on December 1, 2009 (the date and approximate time the victim was attacked inside appellant's van) to report that his van had been stolen. Appellant further alleged that between 5:30 and 5:50 p.m. on December 1,

18

2009, an unidentified woman called 9–1–1 and reported the name of the person who stole appellant's van. Appellant asserted that supplemental discovery provided to trial counsel by the prosecution prior to trial included a CD recording of both 9–1–1 calls. Appellant alleged that trial counsel's failure to investigate the 9–1–1 calls constituted deficient performance and that he was prejudiced thereby, as the 9–1–1 calls would have established an alibi defense.

Appellant's ineffective assistance claim regarding the 9–1–1 calls is barred by res judicata. "A petition for post-conviction relief that alleges the petitioner received ineffective assistance of counsel at trial is subject to dismissal on res judicata grounds where the petitioner had new counsel on direct appeal and where the ineffective assistance of counsel claim could otherwise have been raised and fairly determined on direct appeal without resort to evidence outside the record." *Hoover–Moore* at ¶ 17, citing *State v. Lentz,* 70 Ohio St.3d 527, 529–30 (1994). Here, appellant was represented by new counsel on direct appeal, and appellate counsel raised an ineffective assistance of trial counsel claim regarding other alleged errors made by trial counsel. By his own admission, recordings of the 9–1–1 calls were provided to the defense by the prosecution prior to trial. Thus, any claim of ineffective assistance of counsel pertaining to trial counsel's failure to investigate the 9–1–1 calls could have been raised and fairly determined on direct appeal.

***

In his final claim for relief, appellant alleged the prosecution violated the compulsory process clauses of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution by withholding evidence of the 9–1–1 calls allegedly made by appellant and the unknown female caller. The trial court found appellant's claim without factual basis, stating "[d]efendant has never asserted the failure to comply with rules for discovery before filing his Petition and the Court will not permit him to make unfounded allegations in an attempt to formulate some basis for relief." (Feb. 6, 2014 Decision and Entry, 7.)

Although appellant has framed his argument in terms of a compulsory process violation, the substance of his argument is actually that the prosecution's failure to disclose evidence of the 9–1–1 calls violated Crim.R. 16. As noted above, appellant admitted in his petition that the prosecution provided the defense with the 9–1–1 recordings in supplementary discovery filed prior to trial.

> Nonetheless, appellant contended that the prosecution withheld a portion of the 9–1–1 recordings. However, appellant failed to support his assertion with any evidence other than his own self-serving affidavit. This court has previously held that a petitioner's own self-serving affidavit is legally insufficient to rebut the record in the underlying criminal proceedings. *Taylor* at ¶ 16, citing *State v. Banks*, 10th Dist. No. 10AP–1065, 2011–Ohio–2749.
>
> Moreover, appellant's claim is barred by res judicata. As noted above, appellant was represented by new counsel on appeal and could have raised the Crim.R. 16 discovery issue on direct appeal. *See State v. Wooten*, 10th Dist. No. 91AP–322 (Dec. 31, 1991) (non-compliance with Crim.R. 16 "is an appealable issue," and "res judicata precludes a defendant from asserting issues in post-conviction proceedings which could have been raised on direct appeal").
>
> . . . Accordingly, appellant's [] assignments of error are overruled.

*State v. Griffin*, 2014 WL 7273988, at *4-6.

Again, Petitioner has under these circumstances waived his right to this Court's review of this claim. Further, the Ohio Supreme Court dismissed Petitioner's post conviction appeal because of his failure to submit a memorandum in support of jurisdiction. He has therefore also procedurally defaulted his claim on that basis. *See, e.g., Tanner v. Jeffreys*, 516 F.Supp.2d 909, 915 (S.D. Ohio 2007)(claim procedurally defaulted due to the petitioner's failure to file a timely memorandum of jurisdiction with the Ohio Supreme Court, resulting in the dismissal of the appeal); *Armstrong v. Jackson*, No. 3:06-cv-087, 2009 WL 585853, at *5 (S.D. Ohio March 6, 2009)(same). Moreover, as discussed by the state appellate court, the record does not support the existence of a recording that was not already provided to the defense in discovery.

In claim four, Petitioner alleges that violations occurred during the police investigation regarding multiple photo arrays. Petitioner raised a similar claim on direct appeal; however, he thereafter failed to raise the issue on appeal to the Ohio Supreme Court. (Doc. 18-2, PageID# 526-27.) Accordingly, he is now barred from doing so under Ohio's doctrine of *res judicata*.

*See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16.  It follows, then, that he has waived the claim for review in these proceedings.

Petitioner may still secure review of the merits of these claims if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003).  Petitioner has failed to establish cause and prejudice for his procedural defaults.

Petitioner argues that he is actually innocent of the charges against him.  He maintains that a 9-1-1 call that he purportedly made to police during the time of the events at issue will establish his actual innocence of the charges against him.  The United States Court of Appeals for the Sixth Circuit has described the requirements for establishing actual innocence in habeas corpus proceedings:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup* [*v. Delo*], 513 U.S. [298,] 316, 115 S.Ct. 851, 130 L.Ed.2d 808 [(1995)]. Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United*

> *States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones,* 395 F.3d 577, 589–90 (6th Cir. 2005)(footnote omitted).   Habeas corpus petitioners can rarely meet the high bar set to establish that they are actually innocent of the charges against them, and the record fails to reflect that Petitioner has done so here.

The record does not support Petitioner's allegations regarding the existence of a 9-1-1 call that supports his claim of actual innocence, and there is no basis for his claim that the police or prosecution lied in this regard.   Moreover, the State presented substantial evidence of Petitioner's guilt.

> [T]he evidence presented at trial establishes that appellant obtained a knife from the glove compartment of the van, opened the knife, and threatened S.R. with it. Immediately prior to obtaining the knife, appellant insinuated that he could kill her if she did not comply with his sexual demands. Appellant attempted to cut off S.R.'s clothing and poked at her with the knife, albeit not hard enough to break her skin. Appellant also wrestled and struggled with S.R. in an attempt to regain control of the knife after he briefly lost control of it. . . . [T]he evidence demonstrates that appellant created a risk of physical harm by threatening S.R. with a knife and wrestling with her for control of the knife. "'[I]t is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct.'" *Id*. at ¶ 20, quoting *State v. Losey* (1985), 23 Ohio App.3d 93, 96.

*State v. Griffin*, 2011 WL 3766751, at *21.   Moreover, Petitioner's ownership of the minivan found at the scene of the crime was not controverted.  *See Transcript* (Doc. 18-5, PageID#1377.)

The victim positively identified the Petitioner as her assailant, and the state appellate court found her identification to be reliable in view of the evidence presented:

> [I]n the present case, S.R. had extensive opportunity to view appellant as he spoke to her from the van, as she sat beside him while he drove to the park, and as they sat together talking before the attack began. . . . [T]he victim[ ] had a high degree of attention and faced [her] attacker[] directly. Also. . . the victim's post-attack description[ ] [was] highly accurate. S.R. described her attacker as being a black male approximately five foot eight to five foot nine inches, approximately 230 to 250 pounds, with salt and pepper hair on his face. She also testified that he had a burn scar on his right hand. Appellant argues that this description does not match his height, but both S.R. and appellant were seated or struggling in the van throughout most of the encounter. Appellant does not contest the other details of S.R.'s description. . . .
>
> S.R. was 80 percent certain that the man she selected in the photo array was her attacker, but she could not be more certain because her attacker wore a hat, and the man in the photo did not have a hat on. The identification also occurred within hours after the attack, so the image of her attacker was fresh in S.R.'s mind.

*Id*. at *16-17.[4]  Also,

> there was testimony from another witness corroborating parts of S.R.'s story. There was also independent evidence tending to establish appellant's guilt, including the recovery of a knife in appellant's apartment that was found to have S.R.'s blood on it.

*Id*. at *14.

> [T]here was further evidence establishing that appellant was the attacker. S.R. identified appellant as her attacker in both a photo lineup and in the courtroom. S.R.'s blood was found on the seat covers in appellant's van, on swabs taken from other areas inside the van, and on the knife retrieved from a bedside nightstand in appellant's apartment. Further, S.R. identified the boots that were taken from appellant as matching the boots her attacker wore and the knife found in his apartment as matching the knife her attacker used. S.R. also identified photos of appellant's van as the vehicle driven by the man who attacked her.

*Id*. at *23.

---

[4] Petitioner has a scar on his right hand. *Transcript* (Doc. 18-5, PageID# 1397-98.)

23

Petitioner acknowledged in his state post conviction petition that the prosecution had provided all relevant 9-1-1 recordings to defense counsel.  According to Detective Haynes, Petitioner had called to ask that his vehicle be returned to him and stated that he had filed a stolen car report on December 1, between 5:00 and 6:00 p.m.  *Transcript* (Doc. 18-5, PageID# 1389.)  Petitioner had also told Detective Haynes that, although he had attempted to report the vehicle stolen on December 1, there had been a mix-up and the report was not actually made until December 2, *i.e.,* the day after the assault.  *Id*. (PageID# 1392.)  He had also represented that he was at the basketball recreation center at that time.  *Id*. (PageID# 1389-90.)  He had arrived to play basketball at 4:00 p.m., and had played basketball until someone told him, between 5:30 and 6:00 p.m., that his vehicle had been stolen.  *Id*. (PageID# 1395.)

> However, two teammates on appellant's recreational basketball team testified that the team practiced on Tuesdays and Thursdays from 6:00 p.m. to 8:00 p.m. One of these teammates, who described appellant as a "longtime friend of 35 years," expressly testified appellant did not play basketball with him on December 1. (Tr. 453, 458.) Additionally, the attendant responsible for the recreational center testified that he opened it up at 5:30 p.m. for league games at 6:00 p.m. and that no one was in the facility when he arrived. Thus, there was evidence before the jury tending to discredit appellant's alibi.

*State v. Griffin*, 2011 WL 3766751, at *23.  Quite simply, the record in this action belies Petitioner's claim that he could not have committed the offenses charged and that he is actually innocent.

In short, Petitioner has failed to establish that he is actually innocent so as to justify a merits review of his procedurally defaulted claims.

### Claim Three

In claim three, Petitioner alleges that he was convicted in violation of the Fourth Amendment. This claim fails to present an issue appropriate for federal habeas corpus relief. Generally, habeas corpus relief cannot be based on an alleged violation of the Fourth Amendment, so long as the petitioner had an opportunity to present the claim to the state courts. *Stone v. Powell*, 428 U.S. 465, 482 (1976); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)(opportunity for full and fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism.)

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. [*Stone v. Powell*], at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id.* at 493, 96 S.Ct. 3037.

*Good v. Berghuis,* 729 F.3d 636, 637 (6th Cir. 2013).

Ohio permits a criminal defendant to file a motion to suppress evidence prior to trial. Ohio R. Crim. P. 12(C)(3). Further, there is no basis in the record upon which to find that Petitioner was unable to present a claim under the Fourth Amendment because of a failure of Ohio's procedural mechanism.

Claim three is without merit.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that that this action be **DISMISSED**. It is **FURTHER RECOMMENDED** that Petitioner's *Motion for Partial Summary Judgment* (ECF No. 27) be **DENIED**. Petitioner's *Motion to Compel* (ECF No. 28) is **DENIED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendatio*n will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
December 13, 2016